NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALITSOURCE S.A.R.L. *et al.*, | |
| Plaintiffs, | Civ. No. 21-03293 |
| v. | **OPINION** |
| MARTIN SZUMANSKI *et al.*, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on the Motions to Dismiss filed by Defendants Martin Szumanski ("Szumanski Mot.", ECF No. 35); Anthony Disano ("Disano Mot.", ECF No. 36), Holly Fagan ("Fagan Mot.", ECF No. 38); Joel Pascua and Samara Santos ("Pascua and Santos Mot.", ECF No. 47); 1734 N Sawyer G LLC, 201-203 E 9th G LLC, 273 Liberty Ave G LLC, 343-345 E 3rd G, LLC, 540 S Clinton G LLC, 69 South 9th G LLC, Eva Chin, and Kichan Lee ("Lee-Chin Mot.", ECF No. 61); and 195 N 16th EC LLC ("195 N 16th Mot", ECF No. 76) (collectively, "Defendants").

Plaintiffs Altisource S.A.R.L ("Altisource"), Altisource Online Auction, Inc. ("AOA"), and Realhome Services and Solutions, Inc. ("RHSS") (collectively, "Plaintiffs") oppose. (ECF Nos. 66, 67, 79.) The Court decided the Motions based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' motions are GRANTED in part and DENIED in part.

## BACKGROUND

### I.     Factual Background

The following facts are taken from Plaintiffs' First Amended Complaint ("FAC") and accepted as true for the purpose of deciding the Motions. Plaintiffs allege that Defendants engaged in a scheme to manipulate online housing auctions. (Compl. ¶ 1, ECF No, 6.)

### A.     *The Parties*

Plaintiff Altisource is an integrated service provider and marketplace for the real estate and mortgage industries. (*Id.* ¶ 28.) Altisource is the parent company of Plaintiffs AOA and RHSS. (*Id.*) Altisource is a limited liability company organized under the laws of Luxembourg, with its principal place of business in Luxembourg. (*Id.* ¶ 5.) Plaintiff AOA is a Delaware Corporation with its principal place of business located in Atlanta, Georgia. (*Id.* ¶ 6.) Plaintiff RHSS is a Florida corporation, with its principal place of business located in Atlanta, Georgia as well. (*Id.* ¶ 7.)

AOA operates an online home auction marketplace called Hubzu. (*Id.* ¶ 29.) Hubzu allows sellers to market their inventory directly to buyers and investors, obtain and evaluate bids, and complete transactions. (*Id.*) To sell a property on Hubzu, a seller must set a confidential reserve price—also known as a minimum acceptable price—for each property. (*Id.* ¶ 30.) Plaintiffs' employees have access to the confidential reserve price, but the reserve price is not disclosed publicly to bidders. (*Id.*) Purchasers then bid on properties during auction cycles. (*Id.* ¶ 34.) At the end of an auction cycle, a seller may invite a bidder to enter into a purchase and sale agreement ("PSA"). (*Id.* ¶ 35.) The seller has no obligation to accept any bid—including the highest bid. (*Id.* ¶ 36.) For each completed sale, Plaintiffs receive a commission. (*Id.* ¶ 40–41.)

Defendant Szumanski is a real estate broker who resides in Los Angeles, California. (*Id.* ¶ 47.) Plaintiffs allege Szumanski coordinated the actions of three groups of defendants—(i) the "Buying Agent Defendants"; (ii) the "Conspiring Employee Defendants"; and (iii) the "Buyer Defendants." (Compl. at 1.) The Buying Agent Defendants are Joel Pascua, Anthony Disano, and Samara Santos. (*Id.*) Pascua and Santos are New Jersey real estate agents. (*Id.* ¶ 48.) Disano is a real estate agent in Illinois. (*Id.*) The Conspiring Employee Defendants are George Bellino and Norman Remedios. (Compl. at 1.)  The Buyer Defendants include Holly Fagan, Kichan Lee, and Eva Chin. (*Id.*). They also include 1734 N Sawyer G LLC, 201-203 E 9th G LLC, 195 N 16th EC LLC, 343-345 E 3rd G, LLC, 139 Washington G LLC, 69 South 9th G LLC, 540 S Clinton G LLC, 273 Liberty Ave G LLC (collectively, "the LLC Defendants"). (*Id.*)

B.     *The Alleged Conspiracy*

Plaintiffs allege that sometime "around July of 2020, as the Covid-19 pandemic continued to disrupt life and business across the country and across the globe," Bellino, an RHSS employee, introduced Szumanski to Remedios—a Senior Manager of Asset Management and Settlement Oversight at Altisource. (*Id.* ¶¶ 45, 52, 53.) Bellino introduced Szumanski as "a potential VIP buyer" interested in exploring a relationship to purchase multiple properties each month. (*Id.* ¶ 52.) Plaintiffs allege that Szumanski, Remedios, and Bellino agreed to engage in a scheme to obtain these properties for buyers at below-market rates. (*Id.* ¶ 45.)

The scheme worked as follows. Remedios had access to confidential information regarding properties listed on Hubzu—such as the reserve price. (*Id.* ¶ 53.) Szumanski would contact Bellino and ask him to provide confidential pricing information regarding certain residential properties that Szumanski had identified. (*Id.* ¶ 57.) Bellino would obtain that information from Remedios and deliver it to Szumanski. (*Id.*) Szumanski, Remedios, and Bellino

would then determine the lowest price Szumanski could pay without arousing suspicion. (*Id*.) Szumanski, Remedios, and Bellino would communicate outside the regular business communication channels via telephone or WhatsApp. (*Id*.)

Armed with the confidential pricing information, Szumanski would submit a formal bid on behalf of his customers—the Buyer Defendants. (*Id*. ¶ 57–58.) Remedios and Szumanski would then engage in a "carefully contrived email exchange to generate fraudulent documentation falsely suggesting that the transactions developed through ordinary and appropriate channels." (*Id*. ¶ 56.) Szumanski also would submit "fake offers" using "straw bidders" to deter other legitimate buyers. (*Id*. ¶ 64.) Remedios would use his internal role at Altisource to facilitate the acceptance of Szumanski's bid, even though other legitimate buyers had submitted higher offers. (*Id*. ¶ 57.) In some cases, Remedios facilitated the acquisition of properties below the seller's confidential reserve price. (*Id.* ¶ 82.) Plaintiffs allege that the Buying Agent Defendants were in on the scheme and received kickbacks after each sale. (*Id*. ¶ 60.)  The Buyer Defendants used a shared email system to communicate with Szumanski regarding bid amounts and to sign PSAs. (*Id*. ¶¶ 1, 59.)

C.    *The Impacted Properties*

Plaintiffs identified nine properties ("the Impacted Properties") that were part of Defendants' scheme. (*Id*. ¶ 58.) Defendant Holly Fagan purchased one property directly. (*Id*.) Defendant Kichan Lee purchased seven properties through various LLCs—which are also named as Buyer Defendants. (*Id*.) Finally, Defendant Eva Chin purchased one property through Buyer Defendant 195 N 16th EC LLC. (*Id*.) The FAC details each purchase.

For example, on July 21, 2020, Szumanski emailed Remedios and stated that "a Buyer wants [10 Oakland Court] at $375k + BP [buyer's premium]." (*Id*. ¶ 86.) Remedios responded

and asked for the buyer's details. (*Id.*) Another buyer had submitted a bid of $451,000 for the property and the seller's confidential reserve price was $438,840. (*Id.* ¶¶ 82, 84.) Remedios did not inform the seller of the $451,000 bid and convinced the seller to accept the $375,000 from Fagan and Szumanski. (*Id.* ¶ 88.) Thereafter, Fagan signed a PSA on July 24, 2020 and obtained 10 Oakland Court for $375,000. (*Id.* ¶ 89.) Fagan used an email address provided by Szumanski to complete the PSA. (*Id.*) Remedios then messaged Szumanski on WhatsApp to confirm his receipt of the "Oakland money." (*Id.* ¶ 93.) Plaintiffs allege the "Oakland money" was a kickback. (*Id.*) Pascua served as the buyer agent on this sale because Szumanski is not licensed in New Jersey. (*Id.* ¶ 93.)

On July 23, 2020, Szumanski emailed Remedios to attempt to purchase 1734 N Sawyer Avenue in Chicago, Illinois. (*Id.* ¶ 100.) Remedios did not disclose a legitimate bid of $265,000 to the seller and told Szumanski "[w]e can do it for $160k." (*Id.* ¶ 101.) Lee, on behalf of Defendant 1734 N Sawyer G LLC, signed a PSA on July 28, 2020, and listed Szumanski's email address on the document. (*Id.* ¶ 106.) Disano served as the buying agent because Szumanski is not licensed in Illinois. (*Id.* ¶ 108.)

For 201-203 E 9th Street in Plainfield, New Jersey, Plaintiffs allege that Lee bought the property—through an LLC Defendant—for at least $128,000 less than another legitimate bidder had offered. (*Id.* ¶ 129.) Szumanski placed the bid on Lee's behalf. (*Id.* ¶ 133.) Plaintiffs allege that Defendants Remedios and Bellino engaged in a "scripted" exchange to make Szumanski's bid seem like the only legitimate option. (*Id.* ¶¶ 132–134.) Eventually, Remedios instructed another Altisource employee to "reject all bids on this one" because they were "not legitimate." (*Id.* ¶ 134.) Remedios then manually accepted Szumanski's offer. (*Id.* ¶ 135.) Lee signed a PSA. (*Id.* ¶ 139.) Pascua served as the buyer's agent and also signed the PSA. (*Id.* ¶ 141.)

In similar fashion, Lee signed PSAs and purchased 343-345 E 3rd Street in Plainfield, New Jersey, (*Id*. ¶¶ 113–128); 139 Washington Street in East Orange, New Jersey, (*Id*. ¶¶ 160–174); 69 South 9th Street in Newark, New Jersey, (*Id*. ¶¶ 175–189); 540 S Clinton Street in East Orange, New Jersey, (*Id*. ¶¶ 190–204); and 273 Liberty Avenue in Jersey City, New Jersey on behalf of LLC Defendants (*Id*. ¶¶ 205–220). For each sale, Szumanski submitted the bids outside the normal Hubzu system and Remedios neglected to tell the buyers about higher legitimate offers. Pascua served as the buying agent on each purchase and signed each PSA. Plaintiffs allege that Pascua and Bellino received kickbacks for each sale.

        D.    *The Scheme Uncovered*

Plaintiffs received complaints about suspicious bidding patterns in July 2020. (*Id*. ¶ 61.) In September 2020, after an internal investigation, Plaintiffs confronted Remedios. (*Id*. ¶ 67.) Remedios admitted to sharing confidential information with Defendants, providing Defendants with property lists, favoring the Defendants' bids, blocking other high bidders, making false statements to sellers, colluding with the Szumanski, and receiving kickbacks for his efforts. (*Id*. ¶ 68.) Plaintiffs terminated Remedios' employment and subsequently terminated Bellino from his employment at RHSS. (*Id*. ¶ 70.) Plaintiffs allege that, but for their investigation of Remedios, Defendants would have continued the scheme indefinitely. (*Id*. ¶ 71.)

## II.    Procedural History

Plaintiffs brought this action on February 23, 2021, (ECF No. 1), and amended their seven-count complaint on May 10, 2021, (ECF No. 6). Count I alleges a violation of the Federal Racketeering Influenced and Corrupt Organization Act (RICO) against all Defendants. Count II alleges a conspiracy to violate RICO against all Defendants. Count III alleges a civil conspiracy against all Defendants. Count IV alleges common law fraud against Szumanski, Remedios, and

Bellino. Count V alleges a violation of the New Jersey RICO Statute against all Defendants.

Count VI alleges a conspiracy to violate the New Jersey RICO Statute against all Defendants.

Count VII alleges a violation of the Illinois Consumer Fraud Act against Disano, Szumanski,

Lee, Remedios, Bellino, and 1734 N Sawyer G. LLC. All Defendants have been served except

for Remedios—who resides in Mumbai, India. (Szumanski Mot. at 35.)

   Martin Szumanski and Anthony Disano moved to dismiss on June 14, 2021 (ECF Nos.

35, 36.) Holly Fagan moved to dismiss on June 17, 2021. (ECF No. 38.) Joel Pascua and Samara

Santos moved to dismiss on June 25, 2021. (ECF No. 47.) George Bellino answered on July 19,

2021. (ECF No. 59.) 1734 N Sawyer G LLC, 201-203 E 9th G LLC, 273 Liberty Ave G LLC,

343-345 E 3rd G, LLC, 540 S Clinton G LLC, 69 South 9th G LLC, Eva Chin, and Kichan Lee

moved to dismiss on July 22, 2021. (ECF No. 61). Plaintiffs filed two briefs in opposition. (ECF

Nos. 66, 67.) Defendants replied on August 8, 2021. (ECF No. 69, 70, 71, 72, 73.) 195 N 16th

EC LLC filed its motion to dismiss on September 3, 2021. (ECF No. 76.) Plaintiffs responded on

October 4, 2021. (ECF No. 79.) 195 N 16th EC LLC replied on October 12, 2021. (ECF No. 80.)

## LEGAL STANDARD

   To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges*

*v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a

district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.

2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

*Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because

7

they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement [to] relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## <u>DISCUSSION</u>

The Court has subject matter jurisdiction over the RICO claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a), and over the related state-law claims under 28 U.S.C. § 1367. The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

## I.  RICO

RICO provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962.]" 18 U.S.C. § 1964(c). Section 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To have standing to assert a civil RICO claim, a plaintiff must show that the Defendant's violation proximately caused injury to the plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex, Co*, 473 U.S. 479, 496 (1985).

Defendants make three arguments to support their motions to dismiss Plaintiffs' § 1962(c) claim. First, Defendants argue Plaintiffs failed to plead the existence of a "distinct" RICO enterprise. Second, Defendants argue that the Plaintiffs failed to allege Defendants' "participation" in the conduct of the enterprise through a "pattern of racketeering activity."

Third, Defendants argue that Plaintiffs lack standing to bring a RICO claim. The Court will take each argument in turn.

A.   *The Person–Enterprise Distinctness Requirement*

Section 1962(c) prohibits a "person employed by or associated with any enterprise" from engaging in certain illegal activity. 18 U.S.C. § 1962(c). A RICO "person" is any individual or entity capable of holding a legal or beneficial interest in property. *Id.* § 1961(3). A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4).

Courts have derived a "distinctness" requirement from the language of § 1962(c). *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). To establish liability under § 1962(c), one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *Id.* A RICO person must be distinct from the RICO enterprise because a person cannot "associate" with themselves. *See id.* at 161 ("In ordinary English one speaks of employing, being employed by, or associating with others, not oneself.").

Defendants argue that Plaintiffs' FAC failed to meet RICO's "distinctness requirement." (Szumanski Mot. at 8; Fagan Mot. at 14; Lee-Chin Mot. at 7–8.) The FAC states: "Each of the Defendants is a 'person' within the meaning of [RICO]," and the alleged "enterprise" is the "association-in-fact of the Buying Agent Defendants, the Buyer Defendants and the Conspiring Employee Defendants." (*Id.* ¶¶ 226, 231.) According to Defendants, the alleged facts fail to meet the distinctness requirement because there cannot be complete overlap between the members of

the RICO enterprise and the RICO persons named as defendants. (Szumanski Mot. at 8 (citing *Zavala v. Walmart Stores, Inc.*, 447 F.Supp.2d 379 (D.N.J 2006).)

There is some support for Defendants' theory. District courts in the Third Circuit have treated "overlap" between the RICO persons and the members of a RICO "association-in-fact" enterprise inconsistently. *See* Laurence A. Steckman, *RICO Section 1962(c) Enterprises and the Present Status of the "Distinctness Requirement" in the Second, Third and Seventh Circuits*, 21 Touro L. Rev. 1083, 1232 (2006) (collecting cases). Some courts have taken Defendants' view and disallowed complete overlap between the alleged wrongdoers and the members of the association-in-fact enterprise. *See, e.g., Zavala*, 447 F.Supp.2d at 382; *Kaiser v. Stewart*, 1997 U.S. Dist. LEXIS 12788, at *29 (E.D. Pa. Aug. 19, 1997). Other courts have found that a RICO enterprise may be an association of RICO persons. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 1995 WL 455969, at *6 (E.D. Pa. July 27, 1995) (citing *Brown v. Siegel*, 1995 WL 66860 at *6 (E.D. Pa. Feb. 13, 1995)). On the latter view, "distinctness" requires only that "no one corporate defendant is alleged to be the enterprise and a person." *Id*. (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 262-64 (3d Cir. 1995)).

This Court takes the latter view: a RICO enterprise may be an association of RICO persons. One commentator illustrated the implausibility of Defendants' theory:

> Taken to its logical extreme, the notion that an association-in-fact enterprise composed exclusively of defendants does not satisfy the person / enterprise distinctness principle would mean that an association-in-fact composed of every member of an organized crime gang was not distinct from the gang and therefore immune from RICO liability. This is clearly wrong. Moreover, it would make little sense to say that if separate suits are brought against each of multiple defendants, there is person / enterprise distinctness, but that distinctness is lost if all of the individuals composing the enterprise are sued in the same case.

Gregory P. Joseph, *Civil RICO: A Definitive Guide* § 9 (5th ed. 2018). Rather, "if defendants band together to commit [violations] that they cannot accomplish alone . . . then they

10

cumulatively are conducting the association-in-fact enterprise's affairs, and not [simply] their own affairs." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 383 (3d Cir. 2010) (alterations in original). In other words, the cumulative association between defendants is the enterprise. Each RICO person associates with that collective enterprise. Distinctness requires only that no single defendant is alleged to be "the" enterprise and "a" person. *See Jaguar Cars, Inc.*, 46 F.3d at 262–64.

Thus, the FAC satisfies the distinctness requirement. Here, no Defendant is alleged to be both *a* RICO person and *the* RICO enterprise. Rather, each Defendant is a RICO person and one component part of the larger RICO enterprise. *Cf. Brokerage Concepts, Inc.*, 1995 WL 455969, at *6. Because the alleged RICO enterprise is not simply a RICO person "referred to by a different name," Plaintiffs properly plead an enterprise "distinct" from the individual RICO persons named as defendants. *See King*, 533 U.S. at 161.

B.     *Participation in the Enterprise through a Pattern of Racketeering Activity*

Mere association with a RICO enterprise does not violate § 1962(c). To be liable under this provision, a defendant must "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370-71. The "conduct or participate" element requires a defendant to "have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). More precisely, "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id*. at 183. "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id*. at 184.

In addition, "pleading that a defendant 'participated in the operation or management' of an enterprise [] is not enough to make out a violation of § 1962(c)." *Brokerage Antitrust Litig.*, 618 F.3d at 371 (quoting § 1962(c)). Rather, the defendant must have "participated" through "a pattern of racketeering activity." *Id*. Section 1961 defines racketeering activity to include various criminal offenses, including wire fraud. *See* 18 U.S.C. § 1961(1). A pattern of such activity "requires at least two acts of racketeering activity." *Id*. § 1961(5). Two or more racketeering predicate offenses establish a "pattern" if the predicates were "related and . . . amounted to, or threatened the likelihood of, continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989).

In sum, the Plaintiffs must allege that each Defendant (1) "participated" in the enterprise's affairs through at least two predicate acts of racketeering activity; and (2) that the acts of racketeering activity constituted a "pattern"—*i.e.* that the predicate acts were "related" and "amounted to, or threatened the likelihood of, continued criminal activity." *See Hollis-Arrington*, 205 Fed.Appx. at 52–54 (quoting *H.J. Inc.*, 492 U.S. at 237).

       1.    <u>Participation in Enterprise through Two Predicate Racketeering Acts</u>

Plaintiffs contend Defendants participated in the enterprise through predicate acts of wire fraud. To plead wire fraud as a predicate act, a plaintiff must allege: "(1) the existence of a scheme to defraud; (2) the use of the mails [or wires] . . . in furtherance of the fraudulent scheme; and (3) culpable participation by the defendant, that is, participation by the defendant with specific intent to defraud." *United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005). *See also* 18 U.S.C. § 1343.[1]

---

[1] Cases construing the mail fraud statute (§ 1341) are applicable to the wire fraud statute (§ 1343) as well. *See United States v. Giovengo*, 637 F.2d 941, 944 (3d Cir. 1980).

Because Plaintiffs rely on wire fraud as the basis for a RICO violation, the allegations of fraud must comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "To satisfy Rule 9(b), plaintiffs must plead with particularity 'the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Id*. at 223–24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id* at 224. Under Rule 9(b), malice, knowledge, and other conditions of a person's mind may be alleged generally. F.R.C.P. 9(b).

### i.    Scheme to Defraud

Plaintiffs adequately allege a scheme to defraud. A "scheme [] to defraud" need not be fraudulent on its face, but must involve "some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudency and comprehension." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3rd Cir. 1991).  Here, the alleged scheme to defraud is the association between the Defendants that aimed to undercut the legitimate bids of other buyers on the Hubzu platform. (Compl. ¶ 1.) This scheme was based on a key omission— members of the enterprise failed to inform Plaintiffs and sellers that higher, legitimate bids existed. (*Id*. ¶ 68.) Plaintiffs allege this fraudulent scheme with particularity and detail numerous purchases in the FAC. (*See id*. ¶¶ 81–223.)

### ii.    Culpable Use of the Wires by Defendants

The question that remains is whether the FAC properly alleged that each Defendant knowingly participated in at least two instances of wire fraud in furtherance of the scheme to defraud. "To be part of the execution of [mail or wire] fraud . . . the use of the mails [or wires] need not be an essential element of the scheme. It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) (citations omitted). Thus, even "completely 'innocent' mailings" (those that contain no false information) can satisfy the mailing element if they are incident to an essential part of the overall scheme. *Kehr Packages, Inc.*, 926 F.2d at 1415 (quoting *Schmuck*, 489 U.S. at 715); *see also Tabas v. Tabas*, 47 F.3d 1280, 1295 n.18 (3rd Cir. 1995).

Moreover, the defendant need not have been the actual individual who used the wires. *See United States v. Bentz*, 21 F.3d 37, 40–41 (3d Cir.1994). It is sufficient that the use of the wires by others occurred in the ordinary course of business related to the fraudulent scheme, or was foreseeable as part of the furtherance of the fraudulent scheme. *Id*.; 18 U.S.C. § 1343. However, unwitting participation in a fraudulent scheme is not a violation. *Dobson*, 419 F.3d at 237. Rather, Plaintiffs must allege that each Defendant participated in the scheme knowingly and "in furtherance of the illicit enterprise." *Id*.

### Defendants Szumanski, Lee, and Fagan

Plaintiffs adequately pled that Szumanski committed at least two predicate acts of wire fraud. The FAC notes multiple specific messages between Szumanski and Remedios to arrange the sale of properties in furtherance of the scheme. For example, the FAC alleges that on September 16, 2020, Szumanski offered Remedios a large "bonus" to "work on the back end" to secure a property at auction. (Compl. ¶ 210.) Likewise, on August 17, 2020, Szumanski asked Remedios if he should have Kichan Lee buy homes under multiple names so that "Kichan Lee

14

won't appear to have as many." (*Id.* ¶ 65.) Finally, the FAC alleges that Szumanski directed Remedios' fraudulent activities regarding the nine Impacted Properties. (*See id.* ¶¶ 87, 133, 210, 234.) These pleadings adequately allege two predicate acts of wire fraud under 18 U.S.C. § 1343. Moreover, Plaintiffs' recitation of specific dates and communications injects the requisite specificity into the allegations against Szumanski to satisfy Federal Rule of Civil Procedure 9(b). *Lum*, 361 F.3d at 224.

Likewise, Plaintiffs adequately alleged that Lee committed or directed multiple acts that violated 18 U.S.C. § 1343. Lee purchased seven of the nine Impacted Properties, and signed PSAs for each property as detailed in the FAC. (Compl. ¶¶ 106, 122, 139, 167, 182, 197, 214.) Moreover, Plaintiffs allege that Lee was an active and knowing participant in furtherance of the scheme. Szumanski told Remedios that Lee had "4 different signers for any entity" and that Lee could purchase under different buyer names so he "won't appear to have as many [properties]." (Compl. ¶ 65.) The identification of the specific PSAs satisfies the pleading requirements under Rule 9(b) and the offer, conveyed via Szumanski, to use patsy buyers accuses Lee of knowing, culpable participation in the scheme.

Plaintiffs also allege that Holly Fagan sent, or caused to be sent, two wire communications in furtherance of the scheme to purchase 10 Oakland Court in Matawan, New Jersey. Specifically, Plaintiffs allege that Szumanski wrote to Remedios that he had "a Buyer who wants this at $375k + BP [buyer's premium]" and that Fagan later signed a PSA to purchase the home. (*Id.* ¶ 86, 89.)  Because Fagan allegedly knew of the scheme and was directing

Szumanski's actions to purchase the property, these claims are sufficient to constitute her "participation" in the enterprise through two predicate acts.[2] (*Id.* ¶ 81.)

### Defendants Disano, Chin, Santos, and Pascua

By contrast, the allegations against Disano, Chin, Santos, and Pascua fail. Plaintiffs seem to recognize this failure. In their opposition, Plaintiffs state: "Plaintiffs allege all elements necessary to plead multiple independent predicate acts of wire fraud by at least four defendants: Lee, Szumanski, Remedios, and Bellino." (Opp'n at 17, ECF No. 67.)[3]

The allegations against Disano are too scant to state a claim under RICO. Disano was a buying agent for one property. (Compl. ¶ 108.) For Disano, the only wire communication specifically mentioned is a single PSA. (*Id.*) This falls short of the two instances of alleged racketeering activity needed to state a claim under RICO.

Likewise, the allegations against Chin fail to state a claim under RICO. Plaintiffs cite just one specific wire communication—the PSA signed on August 25, 2020. (*Id.* ¶ 153.) This falls short of the two predicate acts required to prove liability under § 1962(c).[4]

Finally, the allegations against Santos and Pascua are also insufficient under RICO. Each of the seven allegations against Pascua are the same—that he was recruited to assist in a fraudulent scheme, sent emails across state lines in furtherance of that scheme, and received kickback payments in return for completing the PSAs. (*Id.* ¶¶ 92, 124, 141, 169, 184, 199, 216.) There was only one allegation—with the same boilerplate language—against Santos. (*Id.* ¶ 155.)

---

[2] At this stage, malice, knowledge, and other conditions of a person's mind may be alleged generally. F.R.C.P. 9(b). As discussed below, however, Fagan's predicate acts do not constitute a "pattern" of racketeering activity. *See* Part I.B.2 *infra*.

[3] Remedios has not been served in this case and Bellino did not file a motion to dismiss.

[4] As discussed below, the allegations against Disano, Fagan, and Chin fail because the alleged racketeering acts do not constitute a "continuous" pattern. *See* Section I.B.2 *infra*.

Finally, the FAC alleges that it was Szumanski who placed bids "under the names of Samara Santos and Joel Pascua." (*Id*. ¶ 65.)

These allegations are insufficient to show that Santos and Pascua had "some part in directing" the enterprise's racketeering activity. *Reves v. Ernst & Young*, 507 U.S. at 179. "[L]ower rung" participants may operate the enterprise, *id.* at 184, particularly where employees of a corporate enterprise knowingly implement the decisions of upper management. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 378 (citing *MCM Partners, Inc. v. Andrews–Bartlett & Assocs.*, 62 F.3d 967, 978–79 (7th Cir.1995)).  However, when the defendants are non-employee "outsiders," the requirement that they actively direct the affairs of the enterprise is "rigorously enforced." Gregory P. Joseph, *Civil RICO: A Definitive Guide* § 9(C) (5th ed. 2018) (collecting cases). Here, there is no allegation that Santos and Pascua, as "outsider" defendants, exercised decision making authority or discretion on behalf of the enterprise. Rather, Plaintiffs allege that they acted as real estate brokers on each transaction. That is insufficient to show that Santos and Pascua operated the enterprise as defined under the statute. *Cf. Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681, 690 (8th Cir. 2008) ("Bankers do not become racketeers by acting like bankers.") Thus, the RICO claims against Santos and Pascua are insufficient.

In sum, Plaintiffs alleged that Szumanski, Lee, and Fagan participated in the enterprise's affairs through two or more predicate acts of racketeering activity. Plaintiffs did not allege that Disano, Chin, Pascua, and Santos directed the scheme's affairs through two predicate acts.

2.   <u>Pattern of Racketeering Activity: Relatedness and Continuity</u>

To survive a motion to dismiss, plaintiffs must allege that the two or more acts of racketeering activity constituted a "pattern"—*i.e.* that the predicate acts were "related" and "amounted to, or threatened the likelihood of, continued criminal activity." *See Hollis-Arrington*,

17

205 Fed.Appx. at 52–54 (quoting *H.J. Inc.*, 492 U.S. at 237). The parties do not contest whether the alleged acts were related. Rather, the crux of the dispute is whether or not the alleged predicate acts "amounted to, or threatened the likelihood of, continued criminal activity." *Id*.

"Continuity" is a temporal concept that can be "open-ended" or "closed-ended." *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594 (3d Cir. 1991). Open-ended continuity exists when racketeering acts, by their nature, "project[] into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. Closed-ended continuity refers to a closed period of repeated conduct. *Id*.

Plaintiffs cannot satisfy "closed-ended" continuity. If a plaintiff alleges "closed-ended" continuity, the plaintiff must prove a series of related predicates lasting a "substantial period of time." *Id*. at 242. The Third Circuit has found a period of less than twelve months does not satisfy closed-ended continuity. *See Hughes*, 945 F.2d at 611. Because the conduct here lasted roughly four months, Plaintiffs cannot satisfy closed-ended continuity.

Plaintiffs assert, however, that there was "open-ended" continuity in this case. To show open-ended continuity, Plaintiffs must allege that Defendants' conduct posed a "threat of repetition." *H.J. Inc.*, 492 U.S. at 242. A threat of continuing activity may be proven where the circumstances suggest that the predicate acts are a regular way of conducting business and likely to be repeated. *See Tabas*, 47 F.3d at 1295. However, open-ended continuity cannot be a "one time racket to obtain a specific bounty." *Hughes*, 945 F.2d at 610–11.

Defendants argue that their participation cannot be "open-ended" for two reasons. First, Defendants argue that Plaintiffs allege a closed-ended scheme contemporaneous with the COVID-19 pandemic. Defendants note that the FAC begins with the phrase "[d]uring the disruption of ordinary business operations caused by the Covid-19 pandemic and resulting shelter-in-place orders[.]" (Compl. ¶ 1.)  The Court rejects this argument. Plaintiffs allege that

18

"[b]ut for the discovery of Defendants' criminal RICO enterprise by the Plaintiffs, Defendants would have continued their pattern of racketeering activity indefinitely." (*Id*. ¶ 239.) Moreover, if the last few years have proved anything, the COVID-19 pandemic is not inherently terminable.

Second, Defendants argue that Plaintiffs cannot allege an open-ended scheme, because any threat of future continuity ended when Plaintiffs caught and fired Remedios. (Disano Mot. at 8, ECF No. 36-1.) Though it is a close call, the Court also rejects this argument. The key question is whether the threat of future continuity is adjudged (1) when a defendant is caught; or (2) when the racketeering acts occur. To this Court's knowledge, the question is unsettled in the Third Circuit.

This Court, like others in this circuit, is "impressed by decisions finding continuity where the alleged criminal activity ceased only upon discovery." *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 253 (D.N.J. 2000) (collecting cases). For example, the Sixth Circuit has held that the threat of continuity should be determined by considering the situation at the time the acts were being committed. *Heinrich v. Waiting Angels Adoption Services*, Inc., 668 F.3d 393, 410 (6th Cir. 2012). The defendants in *Waiting Angels* ran an adoption agency and were accused of extortion and fraud. *Id*. at 401. There, the Sixth Circuit found a threat of continuing activity because "there is no inherent limit to the number of couples seeking to adopt or to the number of children that the defendants could hold out as available for adoption." *Id*. at 411. Here, just as in *Waiting Angels*, there was no inherent limit to the number of properties that Defendants could have obtained through the fraudulent scheme. Thus, as in *Waiting Angels*, "the lack of a threat of continuity of racketeering activity cannot be asserted [here] merely by showing a fortuitous interruption of that activity." *Id*. at 410.

19

In sum, Plaintiffs have adequately alleged open-ended continuity against Defendants Szumanski and Lee because their scheme to manipulate Hubzu to buy many properties was not inherently terminable and threatened future repetition.

However, the RICO claims against those Defendants that only sought a single property transaction—the LLCs, Disano, Chin, Santos, and Fagan—are insufficient. Each LLC was incorporated for the purpose of purchasing a single property. Where the objective of the racketeering activity has been achieved and there is no possibility of recurrence, no threat of continuity can be found. *See Hindes v. Castle*, 937 F.2d 868, 874–875 (3rd Cir.1991). As with the LLC Defendants, Plaintiffs alleged that Disano, Chin, Santos, and Fagan sought just one transaction related to a single property each. Thus, the claims against those Defendants also fail for lack of continuity. *See Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594 (3d Cir. 1991) ("Plaintiffs each had but one property to sell; defendants had but one area to acquire. [] Once defendants obtained the property, they posed no future threat to plaintiffs or society.") Here, the LLC Defendants, Disano, Chin, Santos, and Fagan posed no future threat of reoccurrence once the transactions were complete. Thus, their predicate acts did not constitute a "pattern" of racketeering activity.

C.    *RICO Standing*

Finally, Defendants argue that Plaintiffs lack standing to bring this RICO claim. (Szumanski Mot. at 17.) To establish standing to bring RICO claims under 18 U.S.C. § 1964(c), a plaintiff must show that (1) it "suffered an injury to business or property"; and (2) its "injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna*, 221 F.3d 472, 483 (3d Cir.2000) (citations omitted). "[T]he injury to business or property element of section 1964(c) can be satisfied by allegations and proof of actual monetary loss, *i.e.*, an out-of-

20

pocket loss." *Id*. (citations omitted). Such proof must be "concrete." *Id*. To meet the proximate cause requirement, a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Defendants challenge both elements. (Szumanski Mot. at 17.)

The Court finds that Plaintiffs have standing to bring a claim under § 1964(c).  Plaintiffs allege that they lost profits—commission payments—for each Impacted Property because Defendants manipulated Hubzu to undercut the market. Specifically, Plaintiffs allege—in exhaustive detail—that there were higher, legitimate bids for each Impacted Property. (Compl. ¶¶ 84, 99, 117, 131, 148, 162, 177, 192, 207.) Defendants argue that the stated damages are too speculative to state a claim because there was no guarantee that a seller would have accepted those bids. (Szumanski Mot. at 17.) The Court disagrees. At this stage, the Court finds that Plaintiffs have stated a viable claim that Defendants' racketeering activity undercut the Impacted Properties' fair market values and proximately caused financial damages to Plaintiffs. Therefore, Plaintiffs have standing under § 1964(c).

D.    *Summary*

Plaintiffs state a claim under § 1962(c) against Lee and Szumanski. Plaintiffs allege the existence of a distinct enterprise. Plaintiffs allege that Lee and Szumanski directed the enterprise's efforts to manipulate Hubzu when they sent—or caused to be sent—multiple wire communications in furtherance of that scheme. Plaintiffs adequately allege that these predicate acts constituted a pattern because they were related and—but for Remedios' detection—threatened future repetition. Finally, Plaintiffs have standing because the FAC adequately alleged that Lee and Szumanski's acts harmed Plaintiffs' concrete financial interests.

Plaintiffs fail to state a claim under § 1962(c) against Disano, Fagan, Chin, Santos, Pascua, and the LLC Defendants. Plaintiffs failed to allege that these Defendants participated in the operation or management of the enterprise through a pattern of racketeering activity.

The § 1962(c) claims against Bellino and Remedios are still viable because Bellino and Remedios have not moved to dismiss.

## II.    RICO Conspiracy

Section 1964(c) also provides a civil cause of action to persons injured in their business or property by reason of a violation of § 1962(d), which) states that it "shall be unlawful for any person to conspire to violate [1962(c)]." 18 U.S.C. § 1962(d). "RICO conspiracy is not a mere conspiracy to commit the underlying predicate acts. It is a conspiracy *to violate RICO*—that is, to conduct or participate in the activities of a corrupt enterprise." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 539 (3d Cir. 2012) (emphasis in original). Bare allegations of conspiracy described in general terms may be dismissed. *The Knit With v. Knitting Fever, Inc.*, 625 Fed. Appx. 27, 36 (3d Cir. 2015) (citation omitted). Moreover, a "§ 1962(d) claim must be dismissed if the complaint does not adequately allege an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 373.

The Court finds that Plaintiffs state a claim against Szumanski and Lee under § 1962(d). According to the FAC, Szumanski and Lee agreed to use Remedios's inside access at Altisource to procure numerous properties below market value. Szumanski's message to Remedios—that Lee could use proxy buyers to avoid suspicion—supports the allegation of an illicit agreement. (Compl. ¶ 65.) Moreover, as shown above, the FAC adequately alleged that Plaintiffs violated § 1962(c). Thus, Plaintiffs state a claim against Szumanski and Lee under § 1962(d).

However, Plaintiffs fail to state valid claims under § 1962(d) against Disano, Fagan, Santos, Chin, the LLC Defendants, and Pascua. According to the FAC, Disano, Fagan, Santos, Chin, and the LLC Defendants agreed to work with the enterprise to obtain one property each. To conspire to violate RICO, one must agree to further the enterprise through a "pattern" of racketeering activity. § 1962(c). As shown above, the commission of predicate acts in a short period of time for the purpose of obtaining a single property does not constitute a "pattern" because there is no threat of "continuity" after that property has been acquired. *Cf. Hindes*, 937 F.2d at 875. Thus, these Defendants are not liable under § 1964(c) for violations of § 1962(d). Pascua is not liable because the allegations fail to show that he agreed to "participate" in the enterprise's affairs with the level of authority or discretion required to state a claim. *See, e.g.*, *Knitting Fever, Inc.*, 625 Fed. Appx. at 36. In sum, Plaintiffs fail to state a valid claim under § 1962(d) against Disano, Fagan, Santos, Chin, the LLC Defendants, and Pascua.

## III. New Jersey RICO and New Jersey RICO Conspiracy

Plaintiffs bring the same claims as above under the New Jersey RICO Statute, N.J.S.A. § 2C:41-2(c)–(d). "The Third Circuit and the New Jersey Supreme Court have both held consistently that the NJRICO statute should be interpreted in conformity with the federal RICO statute, absent a clear demonstration that there is a divergence." *Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 614 (D.N.J. 2014). The Court finds that, as under the Federal RICO Statue, Plaintiffs have stated a claim against Defendants Lee and Szumanski. Plaintiffs have not stated a claim against Defendants Fagan, Chin, Disano, Santos, Pascua, and the LLC Defendants.[5]

---

[5] Plaintiffs argue that the New Jersey RICO statute is broader than the Federal RICO Statute. (Opp'n at 26, ECF No. 66.) For example, the New Jersey Supreme Court has found that—unlike in Federal RICO—there is no separate "continuity requirement" under the New Jersey Statute.

IV.     **Common Law Fraud**

Plaintiffs allege that Szumanski, Remedios, and Bellino committed common law fraud. (Compl. ¶ 269.) A party asserting a claim of common-law fraud must establish: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereupon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). "Fraud is not presumed; it must be proven through clear and convincing evidence." *Stochastic Decisions, Inc. v. DiDomenico*, 565 A.2d 1133 (N.J. App. Div. 1989).

Szumanski moves to dismiss the fraud claim on the grounds that Plaintiffs have not identified any material misrepresentations in the FAC with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. (Szumanski Mot. at 30.) Plaintiffs failed to respond to Szumanski's argument on this point. (*See generally* Opp'n, ECF No. 66.) Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant. *See Conroy v. Leone*, 316 Fed. Appx. 140, 144 n.5 (3d Cir. 2009). Therefore, the Court will dismiss the fraud claim as to Szumanski.

---

*State v. Ball*, 661 A.2d 251, 263 (N.J. 1995), *cert. denied*, 116 S. Ct. 779 (1996). Rather, "continuity" is inherent in the "relatedness" element of the claim. *Id*. This distinction would be material for just one Defendant—Holly Fagan—because the Court found that Plaintiffs did adequately allege her participation in the scheme through two racketeering acts, but failed to show continuity. *See* Part I.B *supra*. However, *State v. Ball* held that the New Jersey Statute "expressly enjoins use of the RICO statute to cover isolated criminal incidents" and that "some degree of continuity, or threat of continuity is required" to state a claim. *State v. Ball*, 661 A.2d at 264. Thus, as above, the Court find that Plaintiffs did not allege that Fagan represented a repeated threat of criminal activity after purchasing her home.

V.      **Civil Conspiracy**

Plaintiffs allege that the Defendants engaged in a civil conspiracy to defraud Plaintiffs and the sellers of the Impacted Properties. (Compl. ¶ 261.) Like a fraud claim, a claim for conspiracy to defraud must be pled with specificity under Rule 9(b). *Kronfeld v. First Jersey Nat'l Bank*, 638 F.Supp. 1454, 1468 (D.N.J.1986) ("In actions alleging a conspiracy to defraud, the particularity requirements of Rule 9(b) must be met."). Under New Jersey law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177(2005). The necessary elements of a civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved by unlawful means; and (4) special damages. *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 411–12 (D.N.J. 2016) (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir.2003)).

Though civil conspiracy requires an underlying unlawful act, it does not require that each conspirator separately commit that act. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F.Supp.2d 508, 533 (D.N.J. 2011), "It is enough for liability if [the defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do their part to further them." *Banco Popular N. Am.*, 184 N.J. at 177, 876 A.2d 253; *see also Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 496 (D.N.J.1998).

Plaintiffs have sufficiently alleged facts supporting each element of civil conspiracy. First, Defendants involved in the housing purchases constitute a "combination of two or more

persons." *Id*. Second, Plaintiffs allege an agreement with a common design—to obtain houses at below market rates, (Compl. ¶ 1) and that Defendants used a common email system to communicate and submit bids. (*Id*. ¶¶ 1, 59.)

Third, Plaintiffs allege that Defendants were aware of the scheme's unlawful basis—Remedios' inside access at Altisource. (*Id*. ¶ 225.) While Rule 9(b), malice, knowledge, and other conditions of a person's mind may be alleged generally, Fed. Rule Civ. P. 9(b), Plaintiffs also provide some facts to support this allegation. For example, Plaintiffs cite WhatsApp communications that implicate Szumanski, Remedios, Bellino, and Lee. (Compl. ¶¶ 65, 75.) And Plaintiffs exhaustively detail how each Buyer Defendant worked with Szumanski to obtain these homes via auction at extremely favorable prices and allege that the Buying Agent Defendants received "kickbacks." (*Id*. ¶¶ 81–223.) Thus, it is "a reasonable inference" that Defendants were aware that other Defendants would have to commit fraud in order to get the pricing requested. *Cf*. *John Wiley & Sons, Inc.*, 179 F. Supp. 3d at 412 (finding that, at the pleading stage, unreasonably favorable pricing was an indicator of awareness of the scheme).

Fourth, Plaintiffs detail how these below market sales caused financial damages to their business. (*Id*. ¶¶ 81–223.) Accordingly, because "[t]he who, what, when, where, and how have all been articulated," the allegations meet Rule 9(b)'s standard. *John Wiley & Sons, Inc.*, 179 F. Supp. 3d at 413. In sum, Plaintiffs state a plausible claim of civil conspiracy against Defendants at this stage.

## VI.   Illinois Consumer Fraud Act

Plaintiffs argue that Remedios, Bellino, Disano, Szumanski, Lee, and 1734 N. Sawyer G LLC violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). The ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices." 815 ILCS

505/2. A valid claim must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Aliano v. Ferriss*, 370 Ill.Dec. 392, 988 N.E.2d 168, 176 (Ill. App. Ct. 2013).

The ICFA is "primarily concerned with protecting consumers," but businesses "are able to sue other businesses . . . in two instances." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F.Supp.3d 943, 954-55 (N.D. Ill. 2016). First, a business may sue under the ICFA when it is a consumer. *Id.* The IFCA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Second, a business may sue under the ICFA, even if it itself is not considered a consumer, when it can show that "the challenged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *ATC Healthcare Servs.*, 192 F.Supp.3d at 955 (cleaned up). In other words, the plaintiff must show "a nexus between the complained of conduct and consumer protection concerns." *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 823 (7th Cir. 2018) (cleaned up);*see also Linkepic Inc. v. Vyasil, LLC*, 370 F. Supp. 3d 906, 922 (N.D. Ill. 2019)

The Court finds that the ICFA does not apply in this case. First, Plaintiffs are not consumers. Rather, the Plaintiffs were the service provider in this case. Second, the challenged conduct involves a purely private matter—a manipulation of Plaintiffs' own auction platform— not "the market generally." *ATC Healthcare Servs.*, 192 F.Supp.3d at 955;*see also Feldstein v. Guinan*, 148 Ill.App.3d 610, 615 (1st Dist.1986) ("the Act does not redress purely private

wrongs but is for practices which affect the public generally.") Therefore, Plaintiffs claim under the ICFA is dismissed.

## VII.   Affirmative Defenses and Procedural Arguments

In their various motions to dismiss, Defendants raise a series of affirmative defenses and procedural arguments. The Court will address each in turn.

First, the Court rejects Szumanski's argument that the FAC should be dismissed because Plaintiffs have not yet served Remedios. (Szumanski Mot. at 35.) To support his argument, Szumanski relies on *In re Bulk (Extruded) Graphite Products Antitrust Litigation*, 2006 WL 1084093 (D.N.J. Apr. 24, 2006). That case does not support this argument. In *In re Bulk*, a defendant moved to dismiss because he himself was not served within the appropriate time period. *Id.* at *2. Here, Szumanski attempts to argue that the failure to serve a different defendant should result in dismissal of the claims against him. Rule 12(b)(5) does not support such an argument. While Remedios' actions are central to the controversy, the Court declines to dismiss Szumanski because Remedios has not yet been served.

Second, Szumanski argues that the doctrine of *in pari delicto* supports dismissal in this case because Remedios was a wrongdoer and worked for the Plaintiffs. (Szumanski Mot. at 36.) The common-law defense at issue derives from the Latin phrase, *in pari delicto potior est conditio defendentis*: "In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (internal citation omitted). Taking the fact of the FAC as true, the Court cannot determine as a matter of law that Plaintiffs were wrongdoers in this case or that Remedios was acting within the scope of his employment. Therefore, the Court rejects this affirmative defense at this stage. *See e.g. Pickering v. Daniel J. Keating Co.*, 460 F.2d 820, 823 (3d Cir. 1972) ("The scope

of authority or employment of an agent or servant is a factual issue for jury determination."); For the same reason, the Court rejects Fagan's argument that Plaintiffs' suit is barred under the doctrine of "unclean hands." (Fagan Mot. at 33.)

## VIII. What Remains

For Count I (RICO), Count II (RICO Conspiracy), Count V (NJ RICO), and Count VI (NJ RICO Conspiracy), the remaining Defendants are Martin Szumanski, Kichan Lee, Norman Remedios, and George Bellino. For Count III (Civil Conspiracy), all Defendants remain in the case. Count IV (Fraud) and Count VII (ICFA) are dismissed.

## CONCLUSION

For the forgoing reasons, Martin Szumanski's Motion to Dismiss (ECF No. 35) is DENIED as to Count I (RICO), Count II (RICO Conspiracy), Count III (Civil Conspiracy), Count V (NJ RICO), Count VI (NJ RICO Conspiracy); and GRANTED as to Count IV (Fraud) and Count VII (ICFA).

The Motions to Dismiss filed by Anthony Disano (ECF No. 36); Holly Fagan (ECF No. 38); 195 N 16th EC LLC (ECF No. 76); and Joel Pascua and Samara Santos (ECF No. 47) are GRANTED as to Count I (RICO), Count II (RICO Conspiracy), Count V (NJ RICO), Count VI (NJ RICO Conspiracy) and Count VII (ICFA); and DENIED as to Count III (Civil Conspiracy).

Finally, the Motions to Dismiss filed by 1734 N Sawyer G LLC, 201-203 E 9th G LLC, 273 Liberty Ave G LLC, 343-345 E 3rd G, LLC, 540 S Clinton G LLC, 69 South 9th G LLC, Eva Chin, and Kichan Lee (ECF No. 61) is DENIED as to Defendant Kichan Lee regarding Count I (RICO), Count II (RICO Conspiracy), Count III (Civil Conspiracy), Count V (NJ RICO), Count VI (NJ RICO Conspiracy); DENIED as to all other movants as to Count III (Civil

Conspiracy); and GRANTED as to all movants as to Count VII (ICFA). An appropriate Order will follow.


Date: <u>March 29, 2022</u>                                        <u>/s/ Anne E. Thompson</u>
                                                                          ANNE E. THOMPSON, U.S.D.J.