## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ALTISOURCE S.A.R.L. *et al.*,

    Plaintiffs,

    v.

MARTIN SZUMANSKI *et al.*,

    Defendants.

Civil Action No. 21-3293 (RK) (JBD)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon two motions: Plaintiffs' Altisource S.A.R.L., Altisource Online Auction, Inc. ("AOA"), and REALHome Services and Solutions, Inc. (together, "Plaintiffs") Motion to Dismiss Defendant Martin Szumanski's ("Szumanski") Counterclaims for failure to state a claim, (ECF No. 178); and Defendant Norman Remedios's ("Remedios") Motion to Dismiss the claims against him based on lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim, (ECF No. 161). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Motion to Dismiss is **GRANTED** in part and **DENIED** in part, and Remedios's Motion to Dismiss is **DENIED**.

## I.     BACKGROUND

### A.     FACTUAL BACKGROUND

    The Court adopts the summary of relevant facts laid out in the March 29, 2022 decision by the Honorable Anne E. Thompson, U.S.D.J. in this matter. ("MTD Op.", ECF No. 82 at 1–6.) This Court recites only the factual and procedural background necessary to resolve the three pending

motions, incorporating Judge Thompson's summary at points and supplementing the background information as needed.[1]

Plaintiffs are three related corporate entities, one of which, AOA, operates Hubzu, an online home auction marketplace that allows home brokers and sellers to market properties directly to buyers and manage bids for the properties. (First Amended Complaint ("FAC"), ¶¶ 28–29, ECF No. 6.)

> To sell a property on Hubzu, a seller must set a confidential reserve price—also known as a minimum acceptable price—for each property. (*Id.* ¶ 30.) Plaintiffs' employees have access to the confidential reserve price, but the reserve price is not disclosed publicly to bidders. (*Id.*) Purchasers then bid on properties during auction cycles. (*Id.* ¶ 34.) At the end of an auction cycle, a seller may invite a bidder to enter into a purchase and sale agreement ("PSA"). (*Id.* ¶ 35.) The seller has no obligation to accept any bid—including the highest bid. (*Id.* ¶ 36.) For each completed sale, Plaintiffs receive a commission. (*Id.* ¶¶ 40–41.)

(MTD Op. at 2.) Three Defendants—Remedios, George Bellino ("Bellino") (Plaintiffs' employees), and Szumanski (a California real estate broker)—constituted the core of an alleged conspiracy, in which Defendants agreed to engage in a scheme to obtain properties sold through Hubzu for buyers at below-market rates. (FAC ¶¶ 45–47, 52–55.) Also allegedly involved were two New Jersey real estate agents—Defendants Joel Pascua ("Pascua") and Samara Santos ("Santos") (two of three "Buying Agent Defendants"), (*id.* ¶¶ 47–48)—as well as three individuals—Holly Fagan, Kichan Lee ("Lee"), and Eva Chin ("Chin") (together, the "Buyer

---

[1] The Honorable J. Brendan Day granted Plaintiffs' Motion to Amend on May 20, 2024 and ordered Plaintiffs to file their Second Amended Complaint by May 31, 2024. (ECF No. 238.) On May 30, 2024, Plaintiffs filed their Second Amended Complaint. (ECF No. 239.) As a result, the First Amended Complaint that Judge Thompson ruled on is no longer the operative pleading. Nonetheless, the Court cites the First Amended Complaint because the Second Amended Complaint, (ECF No. 239), does not change the allegations relevant to Remedios's Motion to Dismiss or Plaintiffs' Motion to Dismiss the Amended Counterclaims.

Defendants")—who bought properties on Hubzu either directly or through LLCs they controlled (together, the "LLC Defendants"), (*id.* ¶¶ 1, 58).

Judge Thompson summarized the First Amended Complaint's presentment of how the scheme operated as follows:

> Remedios had access to confidential information regarding properties listed on Hubzu—such as the reserve price. (*Id.* ¶ 53.) Szumanski would contact Bellino and ask him to provide confidential pricing information regarding certain residential properties that Szumanski had identified. (*Id.* ¶ 57.) Bellino would obtain that information from Remedios and deliver it to Szumanski. (*Id.*) Szumanski, Remedios, and Bellino would then determine the lowest price Szumanski could pay without arousing suspicion. (*Id.*) Szumanski, Remedios, and Bellino would communicate outside the regular business communication channels via telephone or WhatsApp. (*Id.*)
>
> Armed with the confidential pricing information, Szumanski would submit a formal bid on behalf of his customers—the Buyer Defendants. (*Id.* ¶¶ 57–58.) Remedios and Szumanski would then engage in a "carefully contrived email exchange to generate fraudulent documentation falsely suggesting that the transactions developed through ordinary and appropriate channels." (*Id.* ¶ 56.) Szumanski also would submit "fake offers" using "straw bidders" to deter other legitimate buyers. (*Id.* ¶ 64.) Remedios would use his internal role at Altisource to facilitate the acceptance of Szumanski's bid, even though other legitimate buyers had submitted higher offers. (*Id.* ¶ 57.) In some cases, Remedios facilitated the acquisition of properties below the seller's confidential reserve price. (*Id.* ¶ 82.) Plaintiffs allege that the Buying Agent Defendants were in on the scheme and received kickbacks after each sale. (*Id.* ¶ 60.) The Buyer Defendants used a shared email system to communicate with Szumanski regarding bid amounts and to sign PSAs. (*Id.* ¶¶ 1, 59.)

(MTD Op. at 3–4.) The First Amended Complaint identified nine properties that were part of the alleged scheme, (FAC ¶¶ 3, 58, 63), and detailed how each purchase worked, (*id.* ¶¶ 81–220; *see also* MTD Op. at 6). After receiving complaints about suspicious bidding patterns in July 2020,

Plaintiffs conducted an internal investigation. (FAC ¶¶ 61–67.) Plaintiffs allege that when they confronted Remedios:

> Remedios admitted to sharing confidential information with Defendants, providing Defendants with property lists, favoring the Defendants' bids, blocking other high bidders, making false statements to sellers, colluding with the Szumanski, and receiving kickbacks for his efforts. (*Id.* ¶ 68.) . . . Plaintiffs allege that, but for their investigation of Remedios, Defendants would have continued the scheme indefinitely. (*Id.* ¶ 71.)

(MTD Op. at 6.) Plaintiffs filed their Complaint in this matter on February 23, 2021, (ECF No. 1), and their seven-count First Amended Complaint several months later, (ECF No. 6). Against all Defendants, Plaintiffs filed claims for violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. § 1962(c) (Count I), conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count II), civil conspiracy (Count III), violations of the New Jersey RICO statute, N.J. Stat. Ann. § 2C:41-2 (Count V), and conspiracy to violate the New Jersey RICO statute (Count VI). Against Szumanski, Remedios, and Bellino, Plaintiffs alleged common law fraud (Count IV), and against several Defendants Plaintiffs also alleged a violation of an Illinois consumer fraud statute (Count VII). (FAC ¶¶ 224–328.)

Different groups of Defendants filed six Motions to Dismiss for failure to state a claim, including Szumanski, (ECF No. 35); Santos and Pascua, (ECF No. 47); and Chin, Lee, and several LLC Defendants, (ECF No. 61). On March 29, 2022, Judge Thompson ruled on the Motions, granting them in part and denying them in part. (*See* MTD Op. at 29–30.) Judge Thompson held that the First Amended Complaint stated a federal RICO claim against Lee and Szumanski:

> Plaintiffs allege the existence of a distinct enterprise. Plaintiffs allege that Lee and Szumanski directed the enterprise's efforts to manipulate Hubzu when they sent—or caused to be sent—multiple wire communications in furtherance of that scheme. Plaintiffs adequately allege that these predicate acts constituted a pattern because they were related and—but for Remedios' detection—

> threatened future repetition. Finally, Plaintiffs have standing
> because the FAC adequately alleged that Lee and Szumanski's acts
> harmed Plaintiffs' concrete financial interests.

(*Id.* at 21.) However, Judge Thompson found that Plaintiffs had failed to plead a viable RICO

claim against the remaining moving Defendants. (*Id.* at 22.) Although Remedios featured

prominently in Judge Thompson's discussion of the alleged scheme, Judge Thompson did not

reach the question of whether Plaintiffs had stated a RICO claim against Remedios because he had

not yet been served at that point. (*Id.*) Judge Thompson further found that Plaintiffs had adequately

pled a federal RICO conspiracy claim and New Jersey RICO claims against Lee and Szumanski

but not against the remaining moving Defendants. (*Id.* at 22–23.) Finally, Judge Thompson

dismissed the common law fraud claim against Szumanski, denied all Defendants' Motions with

respect to the civil conspiracy claim (Count III), and dismissed the claim under the Illinois

consumer fraud statute. (*Id.* at 24–27.)

## B.   PLAINTIFFS' MOTION TO DISMISS SZUMANSKI'S FIRST AMENDED COUNTERCLAIMS

On April 12, 2022, Szumanski answered the First Amended Complaint and added

counterclaims against Plaintiffs. (ECF No. 88.) Szumanski alleged that Plaintiffs had "tolerat[ed]

and condon[ed]" the actions by Remedios that lie at the heart of Plaintiffs' case. (*Id.* at *41.)[2]

Szumanski filed four counterclaims against Plaintiffs, characterized by Szumanski as: *respondeat*

*superior* / vicarious liability, agency, *in pari delicto* doctrine, and unclean hands. (*Id.* at *47–51.)

Plaintiffs moved to dismiss Szumanski's counterclaims, (ECF No. 104), which the Honorable

Zahid N. Quraishi, U.S.D.J. granted via Letter Order on March 15, 2023, (ECF No. 154). Judge

Quraishi held that Szumanski had not alleged harm sufficient to support Article III standing to

---

[2] Pin-cites preceded by an asterisk refer to the page numbers in the CM/ECF header.

bring his claims and that "none of [] Szumanski's purported counterclaims are independent causes of action and therefore fail under [Federal Rule of Civil Procedure] 12(b)(6)." (*Id.* at 3–4.) Judge Quraishi permitted Szumanski to file amended counterclaims within 30 days. (*Id.* at 4.)

On April 14, 2023, Szumanski filed his operative Amended Counterclaim. ("Am. Countercl.", ECF No. 172.) The Amended Counterclaim repeats Szumanski's allegations that Plaintiffs knew of and condoned the misconduct at their companies. (*Id.* ¶¶ 6–21.) Szumanski alleges that, by knowing about the misconduct and suing Szumanski anyway, Plaintiffs' actions harmed Szumanski, including through:

> the denial of a refinancing on land he owned because of the litigation, the rejection of a loan by U.S. Bank for the purchase of a new house because of the litigation, the refusal of access to corresponding lending relationships with two large private lenders because of the litigation, his removal as a VIP buyer from two other auction houses because of the litigation, and his loss of two investor clients because of the litigation.

(*Id.* ¶ 37.) The Amended Counterclaim alleges four claims: Tortious Interference with Prospective Economic Advantage (Based on Vicarious Liability / Respondeat Superior) (Count One, *id.* ¶¶ 39–48); Tortious Interference with Prospective Economic Advantage (Under Agency Principles) (Count Two, *id.* ¶¶ 49–56); Common Law Indemnification (Count Three, *id.* ¶¶ 57–59); and Contribution (Count Four, *id.* ¶¶ 60–62).

On May 5, 2023, Plaintiffs filed a Motion to Dismiss the Amended Counterclaims pursuant to Rule 12(b)(6). (ECF No. 178.) Szumanski filed a brief in opposition, (ECF No. 181), and Plaintiffs filed a reply brief, (ECF No. 182).

## C. REMEDIOS'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

While Judge Thompson's prior decision thoroughly discussed Remedios's conduct as part of the alleged scheme, Judge Thompson's decision did not reach the claims against him because

he had not been served at that point. (MTD Op. at 7.) Plaintiffs filed a letter on July 29, 2022 indicating that they had served Remedios—who was located in India—in accordance with the Hague Convention, (ECF No. 114), and Plaintiffs subsequently filed an Affidavit of Service for Remedios, (ECF No. 141).

On December 22, 2022, Remedios, who has been representing himself *pro se* in the matter, filed an Answer to the First Amended Complaint. (ECF No. 133.) He also filed a consent and registration form to receive docket notifications electronically and a separate letter. (ECF Nos. 134, 135.) On March 23, 2023, Defendant Remedios filed the currently-pending Motion to Dismiss. (ECF No. 161.) Plaintiffs filed a brief opposing dismissal, (ECF No. 173), and Remedios filed a reply brief, (ECF No. 179).[3]

## II.    LEGAL STANDARD

### A.    SUBJECT MATTER JURISDICTION

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. "The burden of demonstrating that a case falls within the jurisdiction of the federal court rests upon the party asserting jurisdiction." *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 911 F.3d 666, 670–71 (3d Cir. 2018) (citing *Kokkonen v. Guardian*

---

[3] Because he filed a Motion to Dismiss after already filing a responsive pleading to the Amended Complaint, Remedios technically ran afoul of Federal Rule of Civil Procedure 12(b). *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). However, even if the Court were to construe Remedios's Motion to Dismiss as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), it would apply the same standard and reach the same result. *See Weber v. Pilot Travel Centers, LLC*, No. 11-5977, 2012 WL 924871, at *3 n.3 (D.N.J. Mar. 19, 2012) ("Treating Defendant's 12(b)(6) motion as a motion filed under 12(c) would not influence the outcome in this motion. Like a Rule 12(b)(6) motion, Rule 12(c) requires the Court accept the Complaint's plausible and factual allegations as true, and draw all reasonable inferences in a plaintiff's favor." (citing *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005))). Further, the Court is cognizant of Remedios's *pro se* status and the fact that his Answer makes the same arguments as those raised in his pending Motion. Therefore, the Court will consider the merits of Remedios's Motion despite his procedural error.

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A movant may challenge the Court's subject matter jurisdiction either through a facial or factual attack on the complaint. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). "A facial attack 'concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites.'" *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015) (citing *CNA*, 535 F.3d at 139). In reviewing a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citation omitted).

**B.     PERSONAL JURISDICTION**

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for lack of personal jurisdiction. Once a defendant raises a jurisdictional defense, the "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Such competent evidence may include sworn affidavits, *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984), but may not include a mere "unverified complaint," *Markferding v. Westmoreland Cnty. (Pa.) Domestic Rels. Off.*, No. 05-755, 2005 WL 1683744, at *3 (D.N.J. June 17, 2005), or bare assertions made "upon information and belief," *Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, No. 07-375, 2008 WL 65177, at *6 (D.N.J. Jan. 2, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). The Court must construe all disputed jurisdictional facts in the plaintiff's favor. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

### C.   FAILURE TO STATE A CLAIM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). A pleading that "offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). In short, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, a court may only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.   **DISCUSSION**

### A.   PLAINTIFFS' MOTION TO DISMISS SZUMANSKI'S AMENDED COUNTERCLAIM

Plaintiffs seek dismissal of all four counts off Szumanski's Amended Counterclaim. The Court addresses Counts One and Two together before turning to Counts Three and Four.

#### 1.   **Tortious Interference Counterclaims**

Plaintiffs argue that Szumanski's tortious interference counterclaims, (Counts One and Two, Am. Countercl. ¶¶ 39–56), must be dismissed in light of New Jersey's absolute litigation

privilege. (ECF No. 178-1 at 9–12.) They argue that because these claims are premised on Plaintiffs' statements and conduct in litigating this suit, the litigation privilege bars them. (*Id.* 9–10.) Szumanski responds that the privilege applies only to statements made while litigating a matter and not to the act of filing suit itself. (ECF No. 181 at 11.) Szumanski contends that his tortious interference counterclaims are not premised on Plaintiffs' conduct within the litigation but rather to their decision to file suit in the first place. (*Id.* at 14.)

Under New Jersey law, the litigation privilege "applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995) (quoting *Silberg v. Anderson*, 786 P.2d 365, 369 (Ca. 1990)); *see also Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 437 (N.J. 2006). "[T]he application of the litigation privilege is a question of law which may be determined at the motion to dismiss phase." *Burgess v. Bennet*, No. 20-7103, 2021 WL 1050313, at *6 (D.N.J. Mar. 19, 2021) (collecting cases).

Courts applying New Jersey's litigation privilege have recognized a distinction between a tort claim premised on litigation itself and a claim based on a statement made in connection with otherwise unchallenged litigation. "The litigation privilege does not extend to the improper filing of a lawsuit." *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-5072, 2009 WL 2568105, at *7 (D.N.J. Aug. 18, 2009) (citing *Hill v. New Jersey Dep't of Corr. Com'r Fauver*, 776 A.2d 828, 840 (N.J. Super. Ct. App. Div. 2001)); *see also Burgess*, 2021 WL 1050313, at *7 ("It is not apparent that service of a summons, complaint, and subpoenas by a process server, constitutes a 'communication' protected by the litigation privilege."). Nor does the privilege extend to "communications in furtherance of a litigation that is pretextual." *ADP, LLC v. Ultimate Software Grp., Inc.*, No. 16-

8664, 2018 WL 1151713, at *4 n.5 (D.N.J. Mar. 5, 2018); *see also NVR, Inc. v. Davern*, No. 15-5059, 2016 WL 7013459, at *4 (D.N.J. Nov. 30, 2016) ("The Court holds that the litigation privilege does not apply to bar [the defendant's] counterclaims because all three counterclaims are premised on the theory that this entire litigation is pretextual.").

Here, Szumanski alleged that Plaintiffs "fil[ed] this frivolous, vexatious, and tortious litigation despite approving and condoning for years [this] type of conduct by their employees and agents . . . ; fail[ed] to advise the Court and the parties in this litigation of the simultaneously filed E.D.N.Y. litigation . . . ; [and] fail[ed] to timely serve Remedios and attempt[ed] to avoid his participation in this litigation . . . ." (Am. Countercl. ¶ 55.) Thus, Szumanski's Amended Counterclaims rely at least to some extent on the filing of the litigation itself. Plaintiffs cite no case in which a tortious interference claim that was premised on the filing of the lawsuit itself was dismissed based on the litigation privilege. In the one case Plaintiffs offer as factually analogous, the court held that the litigation privilege applied to a suit based on the alleged defamatory statements defendants made at a license renewal hearing—and not simply the filing of the lawsuit itself. *See Zagami, LLC v. Cottrell*, 957 A.2d 691, 694 (N.J. Super. Ct. App. Div. 2008). Therefore, the Courts finds the litigation privilege does not bar these counterclaims.[4]

Plaintiffs' remaining arguments are waived. In their opening brief, Plaintiffs do not argue that Szumanski has failed to state a claim, arguing only the applicability of the litigation privilege.

---

[4] In reply, Plaintiffs argue that a case Szumanski cites, *Brown v. Brown*, 269 A.3d 1215 (N.J. Super. Ct. App. Div. 2022), actually supports Plaintiffs' position. (ECF No. 182 at 4.) In *Brown*, the Appellate Division wrote that the litigation privilege "does not protect a litigant from a subsequent suit seeking redress for injuries caused by an adversary's very act of commencing and prosecuting the earlier suit if that suit was frivolous, vexatious or tortious." 269 A.3d at 463–64. Focusing on the words "subsequent" and "earlier," Plaintiffs discern a distinction between the applicability of the litigation privilege to a claim premised on the filing of a *prior* lawsuit already concluded and a tortious interference counterclaim filed in a *pending* lawsuit not yet resolved. (ECF No. 182 at 4.) Plaintiffs contend that the former is unprotected while the latter is not. The Court reads this language as dicta and will not bar Szumanski's tortious interference claim on the basis of these two words alone.

(*See generally* ECF No. 178-1.) In reply, Plaintiffs switch gears and raise several other arguments. Plaintiffs argue that Szumanski cannot state a tortious interference claim because Judge Thompson's denial of Szumanski's motion to dismiss rendered the litigation non-frivolous as a matter of law, (ECF No. 182 at 5–6); that Szumanski's claims are "patently implausible and not actionable," (*id.* at 6–7); and tortious interference claims must be based on intentional acts, not inaction, as Szumanski in part alleges, (*id.* at 7–8). It is well-settled that a court need not consider arguments raised for the first time on reply. *See Krys v. Aaron*, 112 F. Supp. 3d 181, 198 n.18 (D.N.J. 2015); *see also Laborers' Int'l Union of N. Am., AFL–CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief."). Thus, the Court finds that Plaintiffs' additional arguments challenging Szumanski's tortious interference claim are waived.

Therefore, Plaintiffs' Motion to Dismiss Counts One and Two of Szumanski's Amended Counterclaim is denied.

## 2.    Indemnification and Contribution Counterclaims

Plaintiffs also seek dismissal of Szumanski's common law indemnification and contribution claims (Counts Three and Four, Amended Counterclaim ¶¶ 57–62), arguing that those claims "lack the essential element of shared liability for an injury to an unidentified *third party*." (ECF No. 178-1 at 12 (emphasis in original).)

"Generally, common law indemnification shifts the cost of liability from one who is constructively or vicariously liable to the tortfeasor who is primarily liable." *Harley Davidson Motor Co. v. Advance Die Casting, Inc.*, 696 A.2d 666, 671 (N.J. 1997) (citing *Adler's Quality Bakery, Inc.*, 159 A.2d 97, 110 (N.J. 1960)); *see also Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 766–67 (D.N.J. 2008) ("[I]t is axiomatic that a claim for indemnification,

whether contractual or common law, must be based upon the indemnitee's claim to obtain recovery from the indemnitor for liability incurred to a third party."), *aff'd*, 594 F.3d 238 (3d Cir. 2010). Likewise, contribution claims are premised on a defendant's liability to a third party. "Contribution . . . is the right of one tortfeasor to recover from another tortfeasor when both are liable to a victim and one has paid more than his or her equitable share of the common liability." *In re Cendant Corp. Sec. Litig.*, 139 F. Supp. 2d 585, 594 (D.N.J. 2001) (citing Rest. (Second) Torts § 886A (1979)).

Szumanski's indemnification and contribution claims do not fit these basic definitions. The Amended Counterclaim's allegations make clear that Szumanski seeks to hold *Plaintiffs* liable for any liability that Szumanski ultimately is found to owe to *Plaintiffs*. In his indemnification claim, Szumanski writes that "[i]f . . . there should be a finding of liability on the part of Szumanski as to any of the plaintiffs' alleged damages, . . . Plaintiffs are liable for the actions complained of, thereby entitling defendant Szumanski to . . . indemnification from plaintiffs." (Am. Counterclaim ¶ 59.) The contribution claim likewise states that "[i]f . . . there should be a finding of liability on the part of Szumanski as to any of plaintiffs' alleged damages, then Szumanski is entitled to contribution from plaintiffs . . . ." (*Id.* ¶ 62.) Szumanski cites no case in which a defendant facing liability to a plaintiff was able to turn around and sue the plaintiff for contribution or indemnification under these circumstances. Therefore, the Court finds that Plaintiffs cannot bring these claims.

Szumanski's attempt to save these claims by reframing them as suits against the non-party property sellers is unavailing. Szumanski contends that the non-party sellers are the third parties to whom Plaintiffs are liable, and that therefore Szumanski is entitled to indemnification and contribution from Plaintiffs. (*Id.* at 18–19.) However, Szumanski relies on a doctrine that permits

a court determining parties' affiliation for diversity jurisdiction purposes to realign the parties (i.e. treat a plaintiff as a defendant or a defendant as a plaintiff). (ECF No. 181 at 17–18 (citing *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995)).) This realignment doctrine is limited to interpreting "statutes conferring jurisdiction in federal courts, where the statutory conferral of jurisdiction is predicated upon the adversarial relationship of the parties." *Dev. Fin. Corp.*, 54 F.3d at 160 (citing *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1240 (3d Cir. 1994)). Szumanski offers no basis to apply this doctrine to permit a defendant to seek indemnity and contribution from the plaintiff on the theory that a non-party who has not sued the defendant, rather than the plaintiff, was actually the injured party.

Therefore, Plaintiffs' Motion to Dismiss on Counts Three and Four of the Amended Counterclaim will be granted and these claims dismissed.[5]

## B.   REMEDIOS'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Remedios moves to dismiss the First Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), and for failure to state a claim under Rule 12(b)(6). (ECF No. 161 ¶ 12.) The Court will address each argument in turn.

### 1.   Subject Matter Jurisdiction

Remedios argues the Court lacks subject matter jurisdiction over the matter. (*Id.* ¶ 12.) Remedios contends that the Court's jurisdiction—which Remedios refers to as "territorial

---

[5] Plaintiffs' Notice of Motion, (ECF No. 178), and Proposed Order, (ECF No. 178-2), both reference seeking dismissal on subject matter jurisdiction grounds based on Szumanski's lack of standing. However, Plaintiffs do not raise standing arguments in their briefs. (ECF No. 178 at 182.) Given the absence of any jurisdictional argument from Plaintiffs' briefing, the Court treats the Notice of Motion and Proposed Order's mention of subject matter jurisdiction as an error and will not address those arguments.

jurisdiction to entertain the present Complaint"—fails because relevant conduct, such as payments and finalization of sales, occurred in Georgia and California. (*Id.* ¶ 14.) However, as Judge Thompson already held, subject matter jurisdiction is proper over Plaintiffs' RICO claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a), and the Court has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367. (MTD Op. at 8); *see also Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) (district court has "federal question" jurisdiction over cases "aris[ing] under federal law when federal law creates the cause of action asserted" (citation omitted)). Therefore, Remedios's Motion to Dismiss on this ground is denied.

### 2.    Personal Jurisdiction

Next, Remedios argues the Court lacks personal jurisdiction over him because he is a citizen of India. (ECF No. 161 ¶ 14.) Plaintiffs argue the Court may exercise specific jurisdiction over Remedios based on his case-related activities in New Jersey. (ECF No. 173 at 13.) In support, Plaintiffs point to their allegations that Remedios served as an asset manager for the nine properties, eight of which are located in New Jersey, that serve as the basis for this suit and sent emails to a co-Defendant located in New Jersey in furtherance of the fraud. (*Id.* at 14–15.) In his reply brief, Remedios responds that "the business deals were finalized from [Plaintiffs' office] in India" and "the alleged kick-back payments were received in India." (ECF No. 179 ¶ 14.)

A federal court sitting in New Jersey "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4 and *Carteret Sav. Bank*, 954 F.2d at 144). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4–4(c)). This Court therefore has personal jurisdiction over a party that has "constitutionally sufficient 'minimum contacts'" with New Jersey. *Id.* (quoting

*Carteret Sav. Bank*, 954 F.2d at 149). One way to assert personal jurisdiction over a non-resident defendant is "specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). This arises when a defendant "purposefully avail[s]" itself of a forum and the plaintiff's claims arise from a defendant's contacts with the forum. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Plaintiffs only seek the Court's exercise of personal jurisdiction based on Remedios's contacts with New Jersey related to the pending matter—*i.e.* through a theory of specific jurisdiction. A plaintiff may allege specific jurisdiction by "establish[ing] with reasonable particularity" three elements. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129–30 (3d Cir. 2020) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). First, the defendant must have "'purposefully directed [its] activities' at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp.*, 471 U.S. at 472). Second, the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the forum. *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, the exercise of personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiffs have established Remedios's litigation-related contacts with New Jersey to support this Court's exercise of personal jurisdiction over him. Determining whether personal jurisdiction exists requires considering the "contemplated future consequences" of Remedios's actions as well as the "parties' actual course of dealing." *See Burger King Corp.*, 471 U.S. at 479. Plaintiffs' claims turn on Remedios's conduct in connection with eight residential properties located in New Jersey. (FAC ¶ 48.) Through his position working for Plaintiffs, Remedios

allegedly accessed confidential information regarding the New Jersey properties, submitted "fake offers" on the properties, facilitated the acceptance of Szumanski's below-market bids by his employer for the properties, created a false record to cover up the conduct related to the properties, and accepted illegal kickbacks from other Defendants for his conduct in connection with the New Jersey properties. (*Id.* ¶¶ 56–60, 64, 82.)

While Remedios is not alleged to have set foot in New Jersey, the locus of his tortious conduct was real property located in New Jersey. Remedios thereby "purposefully directed [his] activities" at New Jersey, and Plaintiffs' claims "arise out of" those activities. *O'Connor*, 496 F.3d at 317. Given the centrality of New Jersey real property to the suit, Remedios cannot claim that he is being haled into court in New Jersey based on "'random,' 'fortuitous,' or 'attenuated'" contacts. *Burger King Corp.*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Remedios's obligation to defend against suit in this forum does not result from the "unilateral activity of another party or a third person," *id.* (quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417), but rather from contacts that "proximately result from actions by the defendant himself [to] create a 'substantial connection'" with New Jersey, *id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 201 (1957)). In carrying out business centered on New Jersey properties, Remedios derived a benefit from the laws of this forum state and thus cannot now "wield[] [the Due Process Clause] as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp.*, 471 U.S. at 473–74.

Contrary to Remedios's assertion, the fact that Remedios is a citizen of India, (ECF No. 161 ¶ 14), and may have resided in India during the alleged wrongdoing, (ECF No. 179 ¶ 14), does not defeat personal jurisdiction. As the Supreme Court explained:

> Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State. Although territorial

> presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King Corp.*, 471 U.S. at 476 (citing *Keeton*, 465 U.S. at 774–75); *see also Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992) (citing *Burger King*, 471 U.S. at 476)).

As Plaintiffs argue, (ECF No. 173 at 14–15), Remedios's jurisdictional contacts are bolstered by his emails to co-Defendants located in the forum. "The Third Circuit has affirmed the exercise of personal jurisdiction where defendants have made transactional contacts with the forum state, such as telephone conferences and correspondence, coupled with a meeting in person to finalize a loan agreement." *Zaretsky v. Cerberus Landholding, LLC*, No. 05-3998, 2006 WL 8457639, at *3 (D.N.J. Aug. 8, 2006) (citing *Carteret Sav. Bank*, 954 F.2d at 147). For example, the First Amended Complaint alleges that Remedios sent several emails to Bellino in New Jersey in July 2020 as part of the alleged scheme. (FAC ¶¶ 132–34.) While these communications into New Jersey likely would not alone support jurisdiction, they support the Court's finding based on the real property that underlies Remedios's conduct. *See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482–83 (3d Cir. 1993) (finding that defendant's twelve communications into the forum and his negotiations over an agreement that "would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum" established minimum contacts).

18

The Court also finds that the exercise of personal jurisdiction over Remedios comports with "traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citation omitted). In this inquiry, the Court considers "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Remedios, a citizen of India, undoubtedly faces a burden litigating this matter in this forum. However, the Court's finding of the weight of this burden is somewhat lessened by the fact that Remedios, proceeding *pro se*, has signed up to receive electronic notices in this matter and has been active in litigating the case over the past year, all without physically appearing here. (ECF Nos. 133–35, 161, 164, 165, 179, 194, 198, 209, 211.)[6] Despite Remedios's residence abroad, he should have anticipated the possibility of being haled into court in New Jersey given the New Jersey real estate transactions he facilitated for a United States company. Affording relief among the parties is also more convenient and effective where a number of the individual Defendants—Pascua, Santos, Chin, and Bellino, (FAC ¶¶ 9, 11, 17, 23)—are New Jersey residents and all eight LLC Defendants are organized under the laws of New Jersey, (FAC ¶¶ 14–16, 18–22).

New Jersey's interest in adjudicating this dispute is strong. Of the nine residential properties that underly Plaintiffs' suit, eight are located in this forum. New Jersey has a strong interest in ensuring that its residential property market functions fairly and efficiently. To that end, the forum's interest is furthered by in-forum adjudication of a dispute involving fraud and manipulation of its real estate market. New Jersey's interest is further underscored by the fact that,

---

[6] This is not to say that Remedios, by participating in litigation and discovery, has waived his personal jurisdiction arguments.

as the First Amended Complaint alleges, Szumanski had to recruit licensed New Jersey real estate agents to carry out Defendants' scheme because the properties were located in New Jersey. (FAC ¶ 48.) The fact that the state licenses real estate agents supports its interest in regulating real estate transactions such as the ones at issue in this litigation. N.J. Stat. Ann. § 45:15-1 ("No person shall engage either directly or indirectly in the business of a real estate broker, broker-salesperson, or salesperson . . . without being licensed so to do as hereinafter provided.").

Finally, the burden on Plaintiffs to litigate this matter in India would be greater, and make far less sense to impose, than the reciprocal burden on Remedios to defend the matter in New Jersey. Therefore, the exercise of personal jurisdiction over Remedios in this forum comports with fair play and substantial justice.

### 3.    Failure to State a Claim

Under the operative First Amended Complaint, Plaintiffs bring claims against Remedios for a RICO violation (Count I), RICO conspiracy (Count II), NJ RICO violation (Count V), New Jersey RICO conspiracy (Count VI), and civil conspiracy (Count III). (*See* FAC ¶¶ 224–68, 281–318; *see also* MTD Op. at 29 (summarizing surviving counts).) Remedios argues that Plaintiffs have failed to state federal or New Jersey RICO claims against him. (ECF No. 161 ¶¶ 20, 23, 37–46.) In opposition, Plaintiffs argue that Judge Thompson "already considered and rejected many of Remedios's arguments" and that therefore her rulings are "dispositive of those arguments." (ECF No. 173 at 11.) Plaintiffs also argue that even if this Court were to evaluate the claims against Remedios, they have sufficiently alleged federal and New Jersey RICO violations to survive dismissal under Rule 9(b) and Rule 12(b)(6). (*Id.* at 19–29.)

The Court briefly addresses Plaintiffs' contention that the law of the case doctrine precludes Remedios from making certain arguments. "The law of the case doctrine 'limits

relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003) (*In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). Application of the doctrine is a matter of judicial discretion, exercised to "promote finality, consistency, and judicial economy." *Id.* (citing *In re City of Philadelphia Litig.*, 158 F.3d 711, 717–18 (3d Cir. 1998)). Here, Judge Thompson explicitly noted that her decision did not apply to Remedios because he had not moved to dismiss at that point. (MTD Op. at 22.) Therefore, the Court finds that the law of the case doctrine does not preclude Remedios from seeking dismissal. However, the Court nonetheless cites Judge Thompson's opinion and applies its reasoning and discussion of the facts of the case to Remedios's claims.[7]

Remedios argues that Plaintiffs have not alleged the existence of an association-in-fact enterprise because they did not allege that any Defendant shared a "common purpose" or "made any decisions to further the enterprise." (ECF No. 161 ¶¶ 37–39.) Judge Thompson previously denied several Defendants' challenge to the sufficiency of the pleadings respecting a RICO enterprise, finding that the First Amended Complaint alleged that "each Defendant is . . . one component part of the larger RICO enterprise" and that "Plaintiffs properly plead an enterprise 'distinct' from the individual RICO persons named as defendants." (MTD Op. at 11 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).) "[A] RICO claim must plead facts plausibly implying the existence of an enterprise with . . . a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369–70 (3d Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 944 (2009)). The First Amended Complaint

---

[7] For this reason, the Court need not recite Judge Thompson's prior discussion of the background law of RICO claims and the structure of the RICO enterprise alleged in the First Amended Complaint, which the Court adopts in full.

alleges that Defendants "agreed to work together to" perpetuate certain conduct "for the purpose of profiting from fraudulent sales of each of the Impacted Properties." (FAC ¶ 74.) Therefore, Plaintiffs have adequately pled a common purpose here to support the alleged enterprise.

Next, Remedios contends that while a RICO defendant "must have organizational or management control over the Enterprise," by contrast, he was not "managing the day-to-day affairs of AOA solely and/ or in a managerial position." (ECF No. 161 ¶ 20.) Indeed, a RICO defendant "is not liable under [§ 1962(c)] unless [he] has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). However, an "enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. As Plaintiffs note, (ECF No. 173 at 22–24), Remedios conflates his employer AOA with the enterprise. While the First Amended Complaint may not allege Remedios's management of AOA, it does adequately allege his role in operating and managing the enterprise. (*See* FAC ¶¶ 53–54, 57.)

Remedios further argues that Plaintiffs have not alleged that he engaged in a pattern of racketeering activity because "there is no evidence of any fraud or misrepresentation in the emails" Remedios sent. (ECF No. 161 ¶¶ 37, 41.) Relatedly, Remedios argues that Plaintiffs have not pled the predicate fraudulent acts with sufficient particularity under Rule 9(b). (*Id.* ¶ 23.) Both arguments fail. Judge Thompson summarized the relevant standards for alleging a defendant's participation in a pattern of racketeering activity. (MTD Op. at 11–17.) In short, to plead wire fraud as a predicate act, Plaintiffs must allege: "(1) the existence of a scheme to defraud; (2) the use of the mails [or wires] . . . in furtherance of the fraudulent scheme; and (3) culpable participation by [Remedios] . . . ." *United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005). To allege wire fraud with particularity in satisfaction of Rule 9(b), Plaintiffs must plead the "date, place or time" of the

fraud or otherwise provide "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004).[8]

As Judge Thompson explained, the alleged scheme to defraud here is "the association between the Defendants that aimed to undercut the legitimate bids of other buyers on the Hubzu platform." (MTD Op. at 13 (citing FAC ¶¶ 1, 68).) In considering Szumanski's challenge to the adequacy of the predicate acts alleged against him, Judge Thompson found that the First Amended Complaint "notes multiple specific messages between Szumanski and Remedios to arrange the sale of properties in furtherance of the scheme." (MTD Op. at 14.) As two examples, on August 17 and September 16, 2020, Remedios messaged Szumanski through WhatsApp, telling Szumanski that Remedios would "work on the back end" to obtain one of the properties and that Szumanski should use different buyer names to conceal the fraud. (FAC ¶¶ 65, 201.) This satisfies Plaintiffs' obligation to allege predicate wire fraud offenses that support a pattern of racketeering activity. The fact that the communications were not directed to the victims of the scheme does not, as Remedios argues, mute Plaintiffs' reliance. *See Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 247 (D.N.J. 2000) ("[E]ven 'innocent' use of the wires can base an actionable fraud claim; [a] plaintiff need allege only that the interstate phone calls were a step in [the] plot." (citation omitted)). As Judge Thompson concluded, "Plaintiffs' recitation of specific dates and communications injects the requisite specificity into the allegations against Szumanski to satisfy Federal Rule of Civil Procedure 9(b)." (MTD Op. at 15.)

---

[8] Remedios suggests that the entirety of the RICO claim is subject to Rule 9(b). (ECF No. 161 ¶ 30.) However, "[i]t is well-established in this Circuit that RICO itself need only be pled under Rule 8(a), and that Rule 9(b) applies only to RICO predicate acts that themselves require the higher pleading standard." *Bell v. Dave*, No. 21-11816, 2022 WL 2667017, at *6 (D.N.J. July 11, 2022) (quoting *Myrus Hack, LLC v. McDonald's Corp.*, No. 05-2700, 2009 WL 872176, at *9 (D.N.J Mar. 30, 2009)).

Remedios's contention that Plaintiffs have not alleged open-ended continuity, (ECF No. 161 ¶ 42), was addressed by Judge Thompson with reasoning this Court adopts, (MTD Op. at 19–20). To allege a pattern of criminal activity required to support a RICO claim, a plaintiff must plead that a defendant's predicate acts "amount[ed] to or pose[d] a threat of continued criminal activity." *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 250 (D.N.J. 2000) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989)). This requirement is satisfied by alleged "open-ended continuity, when a defendant's conduct posed a "threat of repetition." *H.J. Inc.*, 492 U.S. at 242. Judge Thompson concluded that "Plaintiffs have adequately alleged open-ended continuity against Defendants Szumanski and Lee because their scheme to manipulate Hubzu to buy many properties was not inherently terminable and threatened future repetition." (*Id.* at 20.) The same rationale applies to Remedios, who, like Szumanski, was integral to carrying out each of the nine allegedly fraudulent sales. (FAC ¶¶ 53–57.) To the extent Remedios also argues that Plaintiffs fail to allege a sufficient connection between Remedios's predicate acts and the enterprise's purpose, (ECF No. 161 ¶ 42), this is belied by the pleading. As noted above, the First Amended Complaint alleges the enterprise's purpose was to "profit[] from fraudulent sales of each of the Impacted Properties." (FAC ¶ 74; *see also id.* ¶ 229.) The two predicate wires both directly relate to coordination between Remedios and Szumanski to carry out the enterprise's purpose. (*Id.* ¶¶ 65, 201.)

Finally, Remedios argues that Plaintiffs have not alleged a causal connection between the RICO enterprise and Plaintiffs' loss sufficient to establish Plaintiffs' RICO standing. (ECF No. 161 ¶¶ 37, 44–45); *see also Maio v. Aetna*, 221 F.3d 472, 483 (3d Cir. 2000) (setting out the standard for establishing a plaintiff's standing to bring a federal RICO claim). Judge Thompson

addressed an identical argument and found that Plaintiffs have adequately alleged standing to sue

under section 1964(c):

> Plaintiffs allege that they lost profits—commission payments—for
> each Impacted Property because Defendants manipulated Hubzu to
> undercut the market. Specifically, Plaintiffs allege—in exhaustive
> detail—that there were higher, legitimate bids for each Impacted
> Property. (Compl. ¶¶ 84, 99, 117, 131, 148, 162, 177, 192, 207.) . . .
> At this stage, the Court finds that Plaintiffs have stated a viable claim
> that Defendants' racketeering activity undercut the Impacted
> Properties' fair market values and proximately caused financial
> damages to Plaintiffs. Therefore, Plaintiffs have standing under
> § 1964(c).

(MTD at 21.) This Court agrees, and for this reason, Remedios's motion to dismiss on this ground

is denied.[9]

---

[9] Remedios does not reference Plaintiffs' New Jersey RICO claims at all, and only argues against the federal RICO conspiracy claim on the basis that they have not pled a viable underlying RICO claim. (ECF No. 161 ¶ 47.) Because Remedios does not seek dismissal of the New Jersey RICO claims and the Court finds that Plaintiffs have pled a viable RICO claim, Remedios's motion to dismiss on this ground must be denied.

Remedios also argues that Plaintiffs did not adequately allege common law fraud against him. Judge Thompson's prior decision only dismissed the common law fraud claim against Szumanski because he was the only Defendant who sought dismissal on the fraud claim at that point. (MTD Op. at 24 ("Therefore, the Court will dismiss the fraud claim as to Szumanski.").) However, because Plaintiffs' Second Amended Complaint drops the common law fraud claims against all Defendants, (*see* ECF No. 239), including Remedios, the Court need not consider these arguments because they are now moot.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion to Dismiss the Amended Counterclaim is **GRANTED** in part and **DENIED** in part. Further, Remedios's Motion to Dismiss is **DENIED**. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: May 31, 2024